CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

July 13, 2024

LAURA A. AUSTIN, CLERK
BY /s/ Kendra Campbell
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

JONATHAN WOLFORD and      )
KENNETH MULLINS,          )
on Behalf of Themselves and All   )
Others Similarly-Situated,    )       **CLASS ACTION AND**
                          )       **AND COLLECTIVE ACTION**
*Plaintiff,*              )
                          )
                          )       CASE NO. ___1:24cv28___
v.                        )
                          )
UNITED COAL COMPANY LLC,  )       **JURY DEMANDED**
WELLMORE COAL COMPANY, LLC,   )
and WELLMORE ENERGY COMPANY, LLC,   )
                          )
*Defendants.*             )
                          )

## CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Come Plaintiffs Jonathan Wolford and Kenneth Mullins, by and through counsel, and, for their Complaint against Defendants United Coal Company LLC, Wellmore Energy Company, LLC, and Wellmore Coal Company, LLC, state as follows:

### I.    Summary of the Action

1.    This action seeks unpaid wages, including overtime compensation, for a class and collective composed of workers who, in one or more workweeks from March 9, 2017 to the present (a) worked more than forty hours for one or more of the Defendants in an hourly position at Defendants' Wellmore mines in the vicinity of the Kentucky/Virginia border, (b) engaged in interstate transportation of coal and/or coal miners between Kentucky and Virginia (Defendants' mines spread across the border of Kentucky and Virginia, and involved transportation of coal and miners across state lines, including Kentucky coal across the state line into Virginia), (c) had a purported arbitration agreement with one or more of Defendants, (d) have not initiated an

arbitration with any of the Defendants and (e) were deprived of wages, including overtime compensation.

2.      Defendants violated the Fair Labor Standards Act ("FLSA") and Kentucky Wages and Hours Act ("KWHA") with respect to Plaintiffs and the similarly-situated employees in three ways. Specifically, Defendants required (or at the very least permitted) employees to engage in "off-the-clock" pre-shift work, including (i) donning protective clothing, (ii) gathering, calibrating and donning protective devices, including devices required by the Mine Safety and Health Administration and (iii) gathering tools and supplies needed for the day's work.  Further, Defendants deducted mid-shift time from employees for "underground travel."  Finally, Defendants required (or at the very least permitted) "off-the-clock" post-shift work doffing (including placing on charge and storing for the next shift) protective clothing and equipment.

3.      Specifically, a collective and class action lawsuit was previously filed against Defendants on September 7, 2021 in the United States District Court for the Eastern District of Tennessee.  See *Chapman v. United Coal Company, LLC, et al*., United States District Court for the Eastern District of Tennessee, Case No. 2:21-cv-137.  A copy of the Complaint in that action is attached hereto as Exhibit A.  The plaintiff in that lawsuit sought to proceed on behalf of a proposed class of "all current and former employees," without reference to purported arbitration agreements.[1]  However, the case was ultimately settled on a Rule 23 basis, with the settlement

---

[1]      The proposed class in the *Chapman* matter was "[a]ll current and former employees of Wellmore Energy Company, LLC and/or Wellmore Coal Company, LLC who were not fully-paid since September 4, 2016 for all overtime compensation due for such employee's work in one or more workweeks because time prior to 'clocking in' was not compensated and/or because the employer deducted time from the amount compensated, including deductions of time for 'travel time' travelling underground from the mine entrance to the area of the mine where coal was being actively mined."  See Complaint in *Chapman* matter, attached hereto as Exhibit A.

class ultimately approved by the Court expressly excluding employees who had purported arbitration agreements with Defendants.[2]

4.      Upon information and belief, Plaintiffs have purported arbitration agreements with Defendant.  Accordingly, Plaintiffs and other persons with purported arbitration agreements with Defendants were part of the Rule 23 class proposed in the Complaint in *Chapman*, but not part of the class actually certified in *Chapman* which was bound by the class settlement in *Chapman.*

5.      The purported arbitration agreements between Plaintiffs and Defendants, and other similarly-situated employees and Defendants, expressly purport to apply under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*  See form of arbitration agreement filed by Defendants in the *Chapman* matter, attached hereto as Exhibit B, at 3.  However, the Federal Arbitration Act specifically provides that it does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in … interstate commerce."  9 U.S.C. § 1. Plaintiffs and the similarly-situated employees worked in a multi-state coal mine, and their jobs consisted of being "workers engaged in interstate commerce" by transporting themselves, other miners, and the coal being mined across state lines between Kentucky and Virginia.  Therefore, under the holdings of *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022) (baggage handlers who loaded luggage destined for another state on conveyor belts were a "class of workers engaged in … interstate commerce" under 9 U.S.C. § 1 and thus not bound by arbitration agreements) and *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (April 12, 2024) (*Southwest Airlines*

---

[2]      The order approving the Rule 23 class settlement in *Chapman* specifically excluded from the *Chapman* class "any person who entered into an arbitration agreement with Defendants prior to September 7, 2021 and (c) any person who was hired by Defendants after September 7, 2021 and who entered into an arbitration agreement with Defendants in connection with such hiring."  See Order of Final Approval entered January 11, 2024 in *Chapman* litigation (Ct. Doc. 72 in *Chapman*), attached hereto as Exhibit C.

not limited to workers in transportation industry), Plaintiffs and the similarly-situated employees may proceed with a class and collective action proceeding in this Court.

6.      As a result of Plaintiffs and the similarly situated employees being part of the proposed *Chapman* class, but not part of the ultimately-certified *Chapman* class, Plaintiffs and the similarly-situated employees are entitled to tolling of the statute of limitations under the KWHA and Virginia common law with respect to the period of time that *Chapman* was pending (i.e., the 982 days from the filing of *Chapman* on September 7, 2021 until the *Chapman* court's grant of final approval of the class settlement in *Chapman* on January 11, 2024) under principles articulated in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

7.      Accordingly, this action seeks relief with respect to all wages which should have been, but were not, paid from March 9, 2017 (the date 982 days prior to five years prior to the filing of this action) through the date of the filing of this action.  Further, to the extent Defendants continue to violate federal and/or state law by depriving workers of wages in any of the ways complained of herein during the pendency of this action, this action seeks relief with respect to all such violations through the time of the trial of this action.

## II.      Jurisdiction and Venue

8.      This Court has jurisdiction over the claims of Plaintiffs and those similarly situated pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b).

9.      Further, this Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711-15, as this action seeks to proceed on behalf of a class comprising more than one hundred employees and the aggregate amount in controversy exceeds five million dollars and numerous of the class members are citizens and residents of Kentucky and other states besides the Commonwealth of Virginia.

10.     This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims under the Kentucky Wages and Hours Act ("KWHA") and Virginia state law because they are so related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy and arise from the same set of operative facts as Plaintiffs' claims under the FLSA.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants operate mines that are partly located within the District of this Court and employed Plaintiffs and the similarly-situated employees in those mines.

## **PARTIES**

12.     Plaintiffs are residents and citizens of Kentucky. Plaintiffs' consents pursuant to 29 U.S.C. 216(b) to bring this action is attached hereto as Exhibits D and E.

13.     Defendant Wellmore Energy Company, LLC is a Virginia for-profit limited liability company which has a principal place of business at 2112 N. Roan Street, Suite 500, Johnson City, TN 37601-2519, and may be served by service of process on its registered agent, Business Filings Incorporated, at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

14.     Defendant Wellmore Coal Company, LLC is a Virginia for-profit limited liability company which has a principal place of business at 2112 N. Roan Street, Suite 500, Johnson City, TN 37601-2519, and may be served by service of process on its registered agent, Business Filings Incorporated, at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

15.     Defendant United Coal Company LLC, is a Virginia for-profit limited liability company which has a principal place of business at 2112 N. Roan Street, Suite 500, Johnson City, TN 37601-2519, and may be served by service of process on its registered agent, Paul Konstanty, at 2112 N. Roan Street, Suite 500, Johnson City, TN 37601-2519.

16.    At all times relevant to this Complaint, each Defendant has had at least two employees.

17.    Each Defendant's annual sales have, at all relevant times to this Complaint, exceeded $500,000.00.

18.    Each Defendant is an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203.

## FACTUAL ALLEGATIONS

19.    Defendants employed Plaintiffs as coal miners to work at Defendants' coal mines located along the Kentucky/Virginia border in the three years preceding the filing of this action.

20.    Defendants' records relating to the time worked by Plaintiffs and for which Defendants credited Plaintiffs with having worked are attached hereto as Exhibits F and G.

21.    Except with respect to Plaintiff Mullins' time after November 30, 2019, Defendants classified Plaintiffs as non-exempt under the FLSA; when Defendants would credit either Plaintiff with working more than forty hours in a workweek, they would acknowledge their liability to pay such Plaintiff one and one-half times such Plaintiff's base rate of pay for his work beyond forty hours in a workweek.

22.    Defendants would require Plaintiffs and similarly-situated employees to don MSHA-required clothing and gather, verify the functionality of, and calibrate MSHA-required safety equipment, including but not limited to reflective clothing, steel toed boots, hard hats/helmet, a "spotter" device (a multi-gas detection device used to detect levels of harmful gases, including methane and carbon monoxide in the air surrounding the miner), a self-contained self-rescuer (a device which provided the employee with a personal supply of breathable air in the event of fire or explosion underground), and proximity detector (a device designed to detect

through signals whether large equipment comes in proximity of the employee and if so automatically shut down the equipment so as to prevent the employee from being struck).

23.     Only after Plaintiffs donned all of this equipment and gathered the required safety devices would Plaintiffs be permitted by Defendants to "clock-in"; Defendants did not pay Plaintiffs for the time prior to when they "clocked in" despite knowing that Plaintiffs performed work prior to "clocking in."

24.     After "clocking-in", Plaintiffs would attend a required daily pre-shift meeting before going underground, and would then perform a shift's worth of work underground.

25.     However, Defendants deducted automatically from Plaintiffs' pay a set amount of time per day, which is reflected in Defendants' records for Plaintiffs and the similarly-situated employees.

26.     Defendants' rationale for deducting time from Plaintiffs' pay was based on Defendants' estimate of the amount "travel time" which employees engaged in underground travelling from the mine entrance to the working face of the mine.

27.     However, during the period of time Defendants were deducting time from employees' pay for travel time, Defendants did not maintain, or even attempt to maintain, accurate records of the actual amount of time it took each day for the employee (or even the entire crew) to perform the travel in question.

28.     Further, Defendants' policy of deducting time from Plaintiffs' pay for travel time was illegal; Plaintiffs' activity of getting on and riding underground transportation always occurred after Plaintiffs had begun performing the first work of the day (which occurred prior to Plaintiffs clocking-in above ground when Plaintiffs spent time donning Plaintiffs' required protective clothing and equipment (which Defendants did not pay for) and thereafter attended a required pre-

shift meeting (which Defendants did pay for)), and therefore, the travel time was compensable under the continuous work day doctrine, which requires employers to pay employees from the time the employee begins performing work until the employee last performs work at the conclusion of the work day, other than with respect to a *bona fide* meal break[3].  See 29 C.F.R. § 785.38.

29.    After employees were done with their underground work, Defendant would require employees to clock out, but required employees to perform work thereafter, including doffing protective clothing and equipment, placing lights and protective devices on charge (or delivering them to others to charge), and storing tools, protective clothing, and protective equipment so that they will be available for the next working day's shift.

30.    Plaintiffs and the similarly-situated employees performed work in both Kentucky and Virginia; Defendant's mines crossed the state lines and involved Plaintiffs and similarly-situated employees working in both Kentucky and Virginia in the same day, transporting themselves across state lines aboveground and underground during the day's work, and loading mined coal onto beltlines to be transported across state lines (generally from Kentucky to Virginia).

31.    Defendant Wellmore Energy Company, LLC listed itself as Plaintiffs' employer on Plaintiffs' paystubs.

32.    However, Defendants United Coal Company, LLC and Wellmore Coal Company, LLC also controlled Plaintiffs' employment and were joint employers of Plaintiffs with Defendant Wellmore Energy Company, LLC.

---

[3]    Plaintiff did not ever have any *bona fide* meal break but would instead work continuously, eating only when and where possible between duties.  Even if a substantial break from duties had been provided (it never was), the nature of the underground coal mine environment, including the substantial distance from working areas of the mine to the mine exit, prevented employees from running errands, using the telephone, accessing the internet, watching TV, or even simply enjoying fresh air and sunshine outside entirely impossible, and therefore would prevent an employee from using the break for their own purposes, and would still therefore be required to be compensated as such a break would be solely, or at least primarily, for the benefit of the employer.  Therefore, while Defendants' rationale for their illegal deduction of Plaintiffs' pay every day was to "account" for "travel time" (and not for a meal break), Defendants' policy would also have been illegal if the rationale was to account for a *bona fide* meal break.

33.    For example, attached hereto as Exhibit H is a Facebook page of (and maintained by) Defendant United Coal Company, LLC, in which Defendant United Coal Company, LLC solicited employees to work in the Wellmore mine (pages 2, 6 and 28 of Exhibit H), displayed a picture of a sign relating to safety posted at the Wellmore mine with the logo of its own parent company (Metinvest) with the statement "it's in our blood – we breathe it, speak it, and work to achieve it day in and day out.  Safety is no accident" (Page 15 of Exhibit H), and stated, referring to pictures of Wellmore employees, "Here at #WellmoreCoal, we're family"( Page 25 of H).

34.    Further, attached hereto as Exhibit I is the "Career In UCC" section of the website of Defendant United Coal Company, LLC, in which it states that job applicants can apply for jobs with Wellmore Energy either by contacting United Coal Company, LLC directly, or by contacting Wellmore Energy.

35.    Attached hereto as Exhibit J is the "Management" page of Defendant United Coal Company, LLC, which notes that United Coal Company, LLC's Vice President and General Counsel "is the chief legal officer and serves as Vice President of all corporate subsidiaries" and further notes that United Coal Company, LLC's Vice President of Operations "is responsible for all day-to-day activities associated with safe, compliant and efficient production.  This includes managing the production teams at all undergrounds mines…."

36.    Indeed, not only did  Defendants United Coal Company, LLC and Wellmore Coal Company, LLC control the employment of Plaintiffs and the similarly-situated employees with their subsidiary, Wellmore Energy Company, LLC, but they were themselves controlled by their Ukraine-based parent company, Metinvest.

37.    For example, attached hereto as Exhibits K and L are the "Apply for Job" and "Feedback" sections of Defendant United Coal Company, LLC's website.

38.     Upon information and belief, these webpage were drafted by the Ukraine-based parent company in a non-English language utilizing the Cyrillic alphabet and given to United Coal Company, LLC with instructions that United Coal Company, LLC use them, but never fully translated into English, further illustrating that Metinvest controlled United Coal Company, which in turn controlled its subsidiaries, including Defendants Wellmore Coal Company, LLC and Wellmore Energy Company, LLC.

39.     While Plaintiffs have not sought to add the non-United-States-based Metinvest as a defendant at this time in order to expedite this litigation and avoid the procedural complications associated with pursuing claims against foreign entities, Plaintiffs note that Metinvest's control of the employment of employees of all subsidiaries through the intermediate parent/subsidiaries makes those intermediate parent/subsidiaries joint employers of the employees along with the employing subsidiaries.

40.     To further demonstrate the joint employment of Plaintiffs and the similarly-situated employees by all of the Defendants, Defendants' records for Plaintiffs' time worked (i.e., that time that Defendants credited Plaintiffs with having worked), which are attached hereto as Exhibits E and F, reflect in the footer of each page "United Coal Company, LLC," but also show under "Employee Groups" "WEC-PP2", which upon information refers to Defendant Wellmore Energy Company, LLC and the "Paw Paw 2" mine portal.

41.     Further, despite that paychecks for Plaintiffs and the similarly-situated employees came from Wellmore Energy Company, LLC, Defendants' Human Resources employee indicates in Exhibit M hereto that he is "the Human Resources Manager for Wellmore Coal Company, LLC," for which he uses the term "Wellmore." He indicates that "employees at Wellmore" entered into arbitration agreements and that "Wellmore" employed 180 employees with such agreements

(the agreements themselves purport to be with "Wellmore Coal Company, LLC" – see Exhibit B hereto).  He uses a different terminology to refer to "provid[ing] human resources support for … Wellmore Energy Company, LLC."

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

42.    Plaintiffs bring this action under the FLSA on behalf of themselves and all similarly-situated current and former employees of Defendants who worked as non-exempt employees for Defendants and were not fully-paid for their overtime work which Defendants should have paid within the last three years.

43.    Stated another way, Plaintiffs seeks to bring this action as a collective action under the FLSA against Defendants on behalf of the following persons:

> all current and former employees of Wellmore Energy Company, LLC and/or Wellmore Coal Company, LLC who worked in Kentucky and Virginia, were a party to a purported arbitration agreement, and were not fully-paid since July 13, 2021 for all overtime compensation due for such employee's work in one or more workweeks because such employee was required (or at least permitted) to perform "off-the-clock" work prior to or after their shift or because the employer deducted time from the amount compensated, including deductions of time for "travel time" travelling underground from the mine entrance to the area of the mine where coal was being actively mined, but excluding such employees who initiated arbitration under such purported arbitration agreement.

44.    The employment policies, practices and agreements of Defendants raise questions of fact common to the proposed collective group including:

> a.    whether Defendant has engaged in a pattern or practice of permitting or requiring Plaintiffs and members of the proposed collective group to work in excess of forty hours per workweek for the benefit of Defendant and without appropriate compensation, in violation of the FLSA;

b. whether Defendant has engaged in a pattern or practice of failing to keep accurate records showing all hours worked by Plaintiffs and members of the proposed collective group, in violation of the FLSA;

c. whether the conduct of Defendant was willful;

d. whether Plaintiffs and members of the proposed collective group are entitled to lost wages, liquidated damages and the other relief requested.

45. The claims of Plaintiffs are similar to those of the members of the proposed collective group, in that Plaintiffs have been subject to the same conduct as members of the proposed collective group and Plaintiff's claims are based on the same legal theory as members of the collective group.

46. The Collective members are victims of Defendants' unlawful compensation practices and are similarly situated to Plaintiffs in terms of job duties, pay and employment practices.

47. Defendants' failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee. Thus, Plaintiffs are similarly situated to the members of the Collective.

48. The similarly-situated employees are known to Defendant and are readily identifiable and may be located through Defendant's business records and the records of any payroll companies Defendant uses.

49. Plaintiffs' FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS RELATING TO DEFENDANTS' VIOLATION OF STATE LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23

50.     Plaintiffs bring this action under the Kentucky Wages and Hours Act (and, or in the alternative, under Virginia common law and/or the Virginia Overtime Wages Act) on behalf of themselves and all similarly-situated current and former employees of Defendants who worked for Defendants and were not fully-paid for their work, including their overtime work for Defendant for which Defendant should have paid such employees since March 9, 2017.

51.     Plaintiffs bring Counts II through IV of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, individually, and on behalf of themselves and the following class:

> all current and former employees of Wellmore Energy Company, LLC and/or Wellmore Coal Company, LLC who worked in Kentucky and Virginia, were a party to a purported arbitration agreement, and were not fully-paid since March 9, 2017 for all overtime compensation due for such employee's work in one or more workweeks because such employee was required (or at least permitted) to perform "off-the-clock" work prior to or after their shift or because the employer deducted time from the amount compensated, including deductions of time for "travel time" travelling underground from the mine entrance to the area of the mine where coal was being actively mined, but excluding such employees who initiated arbitration under such purported arbitration agreement.

52.     Plaintiffs are both members of the class they seek to represent.

53.     Defendant failed to pay Plaintiffs and the members of the class they seek to represent wages for work performed, as described herein, in violation of the KWHA.

54.     Under the KWHA, employers are required to pay overtime compensation to non-exempt employees for overtime work performed by such employees.

55.     As Plaintiffs and the similarly-situated employees were non-exempt, Defendant's refusal to pay Plaintiffs and Class Members overtime compensation for overtime hours worked violated the KWHA.

56.     Upon information and belief, the Rule 23 Class is sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

57.     Attached hereto as Exhibit M is a Declaration Defendants submitted in connection with the *Chapman* matter which they contended that there were at least 180 employees with arbitration agreements.

58.     All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). Namely, all members of the Rule 23 Class share common questions, including: (1) whether Defendant paid them overtime compensation for all overtime worked; and (2) whether Defendant failed to pay them the full amount of overtime compensation earned.

59.     Plaintiffs' claims are typical of the claims of the Rule 23 Class, thus satisfying Fed. R. Civ. P. 23(a)(3) typicality.  Defendant's failure to pay Plaintiffs overtime compensation was not the result of any circumstances specific to the Plaintiffs.  Rather, it arose from Defendant's common pay policies of not paying overtime pay, which Defendant applied generally to their employees, despite the fact that Plaintiffs and the similarly-situated employees were non-exempt and entitled to overtime pay.

60.     Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.

61.     Plaintiffs have retained competent counsel experienced in representing classes of employees in lawsuits against their employers alleging failure to pay statutorily required overtime compensation, thus satisfying Fed. R. Civ. P. 23(a)(4).

62.     By failing to pay Plaintiffs and Class Members for all hours worked, and failing to pay employees the full amount of overtime compensation earned, Defendant has created the

circumstance under which questions of law and fact common to the Rule 23 Class members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiffs should be permitted to pursue the claims alleged herein as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

**COUNT I**

**VIOLATION OF FLSA**
**NONPAYMENT OF OVERTIME COMPENSATION**

63.      Plaintiffs incorporate by reference all preceding paragraphs as if the same were set forth again fully at this point.

64.      Defendants are subject to the wage requirements of the FLSA because Defendants are each an "employer" under 29 U.S.C. § 203(d).

65.      During all relevant times, the members of FLSA Collective, including Plaintiff, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

66.      The FLSA requires that every covered employee be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed.  See 29 U.S.C. § 207(a)(1).

67.      Defendants are not exempt from the requirements of the FLSA with respect to the employment of Plaintiffs and the FLSA Collective.

68.      Plaintiffs and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

69.    Defendants knowingly failed to compensate Plaintiffs and the FLSA Collective at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

70.    Defendants willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of:

    a.    failing to keep accurate records showing all the time it permitted and/or required Plaintiffs and members of the proposed collective to work, from the first compensable act to the last compensable act;

    b.    permitting and/or requiring Plaintiffs and FLSA Collective to perform integral and indispensable activities (*i.e.*, work) in excess of forty hours in a work week, for the benefit of Defendant and without compensation at the applicable federal overtime rates;

    c.    failing to pay employees for compensable time worked prior to "clocking in"; or after "clocking out" and

    d.    improperly deducting pay from employees for time worked between "clocking in" and "clocking out" based on an assertion that such deductions were acceptable to account for "travel time" underground.

71.    Pursuant to 29 U.S.C. § 216(b), employers, such as Defendants, who fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for the unpaid minimum and overtime wages, an additional equal amount as liquidated damages, reasonable attorney's fees, and costs of the action.

## COUNT II

### VIOLATION OF KY. REV. STAT. ANN. §§ 337.275, *ET SEQ*.
### BY NONPAYMENT OF WAGES.

72.    All previous paragraphs are incorporated as though fully set forth herein.

73.    Plaintiffs bring this claim on behalf of all members of the proposed Rule 23 Class.

74.    Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* KY. REV. STAT. ANN. §§ 337.275, *et seq.*

75.     KY. REV. STAT. ANN. § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek. *See also* 803 Ky. Admin. Regs. 1:060.

76.     During all times material to this complaint, Defendant was a covered employer required to comply with KY. REV. STAT. ANN. § 337.010(1)(d).

77.     During all times material to this complaint Plaintiffs and the Rule 23 Class were covered employees entitled to the protections of the KWHA. *See* KY. REV. STAT. ANN. § 337.010(1)(e).

78.     Defendants are not exempt from providing Plaintiffs and Class Members the KWHA's overtime benefits because the employees do not fall within any of the exemptions set forth therein. *See* KY. REV. STAT. ANN. § 337.285(2).

79.     Defendants have violated the KWHA with respect to Plaintiffs and the Rule 23 Class by, *inter alia*, failing to compensate them for all hours worked in excess of forty per workweek at one and one-half their "regular rate" of pay.

80.     In violating the KWHA, Defendants acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

81.     Pursuant to KY. REV. STAT. ANN. § 337.385, Defendants, because they failed to pay employees the required amount of wages and overtime at the statutory rate, should be found liable to the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

82.     Pursuant to KY. REV. STAT. ANN. § 337.385, Plaintiffs and Class Members are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

## COUNT III

### VIOLATION OF VIRGINIA COMMON LAW
### BY NONPAYMENT OF WAGES.

83.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

84.    Defendants failed to pay earned wages in violation of Virginia common law.

85.    Specifically, Defendants' failure to pay Plaintiffs and the Rule 23 Class members wages for the full amount of compensable work they performed constituted violation of an express and/or implied-in-fact contract between employer and employee that employees would be paid hourly wages for all work performed.

86.    Defendants' acceptance of the benefit of the work of Plaintiffs and the Rule 23 Class members, while Defendant failed to pay Plaintiffs and the Rule 23 Class members for all compensable work such employees performed, constitutes unjust enrichment; it would be unjust to not require Defendants to compensate Plaintiffs and the other members of the proposed Rule 23 class for their work.

87.    Plaintiff, individually and on behalf of the Rule 23 Class members, seeks the payment of wages for all hours worked, but for which Defendant did not pay wages, including time performing compensable work before being permitted to clock in and time improperly deducted by Defendants for underground travel time.

88.    Defendants' failure to pay for all hours worked caused Plaintiffs and the Rule 23 Class to suffer loss of wages and interest thereon.

89.    Plaintiffs and the Rule 23 Class are entitled to all unpaid wages and pre-judgment interest for Defendant's violation of Virginia common law.

## COUNT IV

### VIOLATION OF VIRGINIA OVERTIME ACT BY NONPAYMENT OF OVERTIME–
### WAGES NOT PAID ON AND AFTER JULY 13, 2021

90.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

91.     With respect to the work of Plaintiffs and the similarly-situated employees on and after July 13, 2021, Defendant's failure to pay for the time worked by Plaintiffs and the similarly-situated employees violated the Virginia Overtime Wage Act, Va. Code § 40.1-29 *et seq.*

92.     Plaintiffs seek on behalf of themselves and all similarly-situated employees all relief available under the Virginia Overtime Wage Act, including unpaid overtime compensation, liquidated damages, and attorney's fees and other expenses of this litigation.


## COUNT V

### NONPAYMENT OF OVERTIME TO PLAINTIFF MULLINS
### AFTER NOVEMBER 30, 2019 IN VIOLATION OF
### KENTUCKY WAGES AND HOURS ACT
### (THIS COUNT ASSERTED INDIVIDUALLY ON BEHALF OF PLAINTIFF MULLINS
### AND NOT BEHALF OF ANY RULE 23 CLASS)

93.     Defendants stopped paying Plaintiff Mullins on an hourly basis for Plaintiff Mullins's work after November 30, 2019.

94.     As indicated in Exhibit G, Plaintiff Mullins worked numerous hours beyond forty hours in a workweek in numerous workweeks after November 30, 2019, but Defendants never paid Plaintiff Mullins overtime compensation based on a misclassification of Plaintiff Mullins as exempt.

95.    Specifically, Defendant classified Plaintiff as exempt under the KWHA's "bona fide executive capacity" exemption, K.R.S. § 541.337.010(2)(a)(2).[4]

96.    In order to meet this exemption, however, under 803 K.A.R. § 1:071(2) an employee must meet the criteria as established in 29 C.F.R. § 541.100(a)(2) through 541.100(a)(4) and 541.101.

97.    Defendant misclassified Plaintiff Mullins as exempt because Plaintiff Mullins's primary duty was not management, as required by 29 C.F.R. § 541.100(a)(2).

98.    Instead, Plaintiff Mullins's primary duties were to assist with coal mining production, filling in where vacancies existed, and not management.

99.    Further, Defendant misclassified Plaintiff because, in Plaintiff Mullins's position, he did not have "the authority to hire or fire other employees" or have his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [be] given particular weight."

100.    To the contrary, Plaintiff Mullins could not hire or fire employees and suggestions and recommendations of Plaintiff as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given any substantial weight at all, let alone particular weight.  Instead, only the suggestions and recommendations of higher levels of "management" other than that occupied by Plaintiff Mullins were considered and given particular weight.

101.    By erroneously classifying Plaintiff Mullins as exempt and not paying Plaintiff Mullins overtime compensation for his overtime work after November 30, 2019, Defendant violated the Kentucky Wages and Hours Act and damaged Plaintiff.

---

[4]    It is the employer's duty to plead and prove the applicability of any exemption to the KWHA, and Plaintiff does not, by including allegations herein relating to the non-applicability of any exemption, relieve Defendants of the duty to plead and prove any exemption Defendants assert is applicable.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that the Court:

A.    Issue process and bring Defendant before the Court;

B.    Authorize notice to issue to members of the proposed collective action and permitting similarly-situated persons a reasonable opportunity to join this litigation with respect to claims under the FLSA;

C.    Certify a class of similarly-situated employees whose rights were violated by Defendant under state law, and grant relief available under applicable state law, including unpaid wages, liquidated damages, and attorney's fees and other litigation expenses, to the class;

D.    Empanel a jury for the trial of all issues of fact;

E.    Enter a judgment awarding Plaintiffs and the Classes damages in the amount of the unpaid overtime compensation, plus liquidated damages in a like amount, in amounts to be proven at trial;

F.    Award Plaintiffs, the Classes and similarly-situated persons joining this litigation all costs of litigation, including expert fees and attorneys' fees;

G.    Grant Plaintiff, the Classes and similarly-situated persons joining this litigation such other further and/or general, legal and/or equitable relief to which they are entitled or which the Court otherwise deems appropriate.

Respectfully submitted,


/s/Alexis I. Tahinci
Alexis I. Tahinci
Tahinci Law Firm, PLLC
105 Ford Avenue, Suite 3
Kingsport, TN 37663

(423) 840-1350
alexis@tahincilaw.com


Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com
(motion for *pro hac vice* admission forthcoming)

John R. Kleinschmidt, III
The Law Office of John R. Kleinschmidt III, PLLC
P.O. Box 1746
Lexington, KY 40588
(859) 866-3097
John@EmploymentLawKY.com
(motion for *pro hac vice* admission forthcoming)

*Counsel for Plaintiff*